**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. MARK THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-cv-6340** |
| | ) | |
| **CITY OF CHICAGO BOARD** | ) | |
| **OF EDUCATION** *et al.*, | ) | **Judge John Z. Lee** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Mark Thompson, a former teacher for Chicago Public Schools (CPS), brings numerous statutory and constitutional claims relating to his time as a teacher and the eventual termination of his employment. Defendants—the Chicago Board of Education and several Board employees—move to dismiss all claims. For the reasons provided below, their motion is granted in part and denied in part.

### I. Factual & Procedural Background

**A. Thompson's Career at Harlan High**

Thompson began teaching at Harlan Community Academy High School in January 2008. Am. Compl. ¶ 4. He wanted to teach physical education, but he was assigned to teach history instead. *Id.* ¶ 14. In a 2012 performance review, he was rated "unsatisfactory" as a history teacher. *Id.* ¶ 22.

Unrelated to his teaching performance, Thompson was twice suspended without pay. The first suspension, in March 2011, concerned accusations that he had provided pills of an unspecified kind to student athletes. *Id.* ¶ 36. The second suspension, in September 2012,

concerned an accusation that he had sexually assaulted a minor. *Id.* ¶ 37. As part of an investigation into the assault accusation, the Board's Inspector General, Defendant Sullivan, issued a subpoena to AOL seeking Thompson's personal emails. *Id.* ¶ 76; Ex. A. The Department of Children and Family Services (DCFS) also investigated the sexual-assault accusation, ultimately determining it was "unfounded." *Id.* ¶ 131. Thompson was not criminally prosecuted. *Id.* ¶ 171 n.4.

The Board notified Thompson in August 2013 that it was terminating his employment, ostensibly for budgetary reasons. *Id.* ¶ 32; Resp. Br., Ex. D. The Board did not attribute its decision to Thompson's performance as a teacher or to his alleged misconduct and suspensions. Am. Compl. ¶ 32; Resp. Br., Ex. D.[1] But months later, in rejecting a grievance filed by Thompson's union, the Board explained that his "unsatisfactory" rating had been a factor in its termination decision. Am. Compl. ¶ 33; Resp. Br., Ex. E.

## B. Earlier Lawsuits

Thompson first sued the Board and employees of the Board in 2011. He filed his complaint in the Circuit Court of Cook County, and the defendants removed the case to federal court, where it was assigned to Judge Guzmán. Thompson's claims in that case (the "2011 federal case") included discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964. The claims were based primarily on the "pill" investigation, the resulting suspension, and Thompson's "unsatisfactory" rating as a history teacher. He had not been fired yet when the operative complaint was filed.

---

[1]Although Thompson did not attach these communications from the Board to his complaint, he referenced them in the complaint and attached them to his response brief. The Court may properly consider them in deciding a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("What makes it appropriate for us to consider the documents ... is that [plaintiff] not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims.").

Judge Guzmán entered summary judgment in favor of the defendants on most claims but permitted Thompson to proceed on a claim that he had been suspended in retaliation for an earlier EEOC complaint. *See Thompson v. Bd. of Educ. of City of Chicago*, No. 11 C 1712, 2014 WL 1322958, at *9 (N.D. Ill. Apr. 2, 2014). Thompson and the defendants settled the case in January 2015.

Thompson also sued the Board and its employees in the Circuit Court of Lake County ("Lake County case"). *See Thompson v. Board of Education Township High School District 113 et al.*, Case No. 13 L 879. Resp. Br., Ex. D. That case, filed in November 2013, included various state-law claims related to the sexual-assault investigation, including a claim that Board employees and the accuser conspired to deprive Thompson of his job. The defendants' motion to dismiss was granted in August 2014, *see id.*, Ex. E, and Thompson appealed. His appeal is still pending.

While both of those cases were proceeding, Thompson, acting *pro se*, filed three separate lawsuits that were consolidated into this single case. The operative complaint is a twelve-count amended complaint that he filed following consolidation. [Doc. 26.]

## II. Legal Standard

In deciding a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts all well-pleaded facts as true. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Pro se* complaints are construed liberally. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).

In addition to the complaint, a court deciding a motion to dismiss considers exhibits attached to the complaint, other documents referenced in the complaint, and information that is properly subject to judicial notice. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Judicial notice may be taken "of prior proceedings in a case involving the same litigant." *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010). The Court can "consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

### III. Analysis

Defendants move to dismiss all of Thompson's claims, many of them on multiple grounds. Before analyzing the claims individually, the Court will address Defendants' argument that the outcome of the Lake County case precludes several of Thompson's claims.

**A. Preclusive Effect of the Lake County Case**

Defendants argue that the trial court's judgment in the Lake County case bars many of Thompson's current claims, and they move to dismiss on that basis. Preclusion is not one of the grounds for dismissal listed in Federal Rule of Civil Procedure Rule 12(b), and normally a preclusion defense must be raised in the answer to a complaint. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). One exception is if the complaint itself discloses that the claims are precluded. *Id.* Another is if the error of raising the preclusion defense before answering "is of no consequence" because the Court has before it everything "needed in order to be able to rule on the defense." *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010).

Whether a state-court judgment precludes claims in a subsequent federal case depends on the preclusion rules of the particular state. 28 U.S.C. § 1738; *Rogers v. Desiderio*, 58 F.3d 299,

301 (7th Cir. 1995). In Illinois, the "doctrine of *res judicata* [claim preclusion] provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided." *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008) (citation omitted).

Some of the elements of claim preclusion are clearly met here. The Lake County case was dismissed on the merits; Defendants were all either defendants in the Lake County case or were in privity with those defendants; and some of Thompson's claims in this case are based on the same facts as claims in the Lake County case. (For example, both cases include claims regarding a subpoena issued to AOL and Thompson's ultimate firing.) Although Thompson relies on new legal theories, that cannot save his claims from being precluded. *See Carr*, 591 F.3d at 913–14 ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory. That is called 'claim splitting,' and is barred by the doctrine of res judicata."). And although many of Thompson's current claims rely on federal law rather than state law, that too is unavailing because Illinois courts have jurisdiction over most federal claims, including Title VII claims, *see Dookeran v. Cty. of Cook, Ill.*, 719 F.3d 570, 576–77 (7th Cir. 2013), and Thompson undoubtedly could have brought some of his current claims in the Lake County case.

That said, there is an open question as to whether a final judgment on the merits has been rendered in the Lake County case. Thompson has an appeal pending, and Illinois law is unclear on whether a trial court's judgment is final for purposes of claim preclusion during the pendency of an appeal. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("To be blunt, we have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim

preclusive effect of a judgment."). As the Seventh Circuit explained in *Rogers*, the Illinois Supreme Court, in *Ballweg v. Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986), held that the filing of an appeal suspends the collateral estoppel (issue preclusion) effect of a circuit court's judgment. *Rogers*, 58 F.3d at 302. Several Illinois appellate courts have extended *Ballweg* to claim preclusion. *See id.* Other Illinois appellate courts have treated a trial court's judgment as preclusive despite a pending appeal without addressing *Ballweg*. *Id.* The Illinois Supreme Court has not clarified the issue in the 20 years since *Rogers* was decided.

Defendants ask the Court to follow the line of Illinois cases that ignores *Ballweg* and treats the final judgment of a trial court as having preclusive effect even when an appeal is pending. Reply Br. at 6. But that is not the course laid out in *Rogers*, where a stay rather than dismissal was endorsed. *Rogers*, 58 F.3d at 302 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–21 (1976)). Neither action is necessary at this point, however, because Defendants can argue their preclusion defense after filing an answer. Thompson's appeal could be resolved by then. If not, the Court will assess whether a stay is appropriate at that time.

In addition to their preclusion arguments based on the Lake County case, Defendants argue that some of Thompson's claims are precluded by the judgment in the 2011 federal case. The judgment in that case is unquestionably final, and the case plays a central role in many of Thompson's claims. Its preclusive effect is addressed in the Court's analysis of Thompson's individual claims, to which I will now turn.

**B. Count I – Retaliatory Discharge**

Thompson claims in Count I that the Board fired him in retaliation for bringing the 2011 federal case. Title VII prohibits employers from retaliating for protected activity, 42 U.S.C.

§ 2000e–3(a), and the filing of a discrimination lawsuit is certainly protected activity, *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009).

In support of his claim, Thompson explains that the Board informed him that he had lost his job during discovery in the 2011 federal case. Am. Compl. ¶ 31. The Board initially attributed its decision to budgetary considerations and Thompson's status as a "temporarily assigned teacher or part-time teacher." Resp. Br, Ex. D. Thompson was actually a tenured teacher, however, so his union filed a grievance on his behalf. Am. Compl. ¶ 56; Resp. Br., Ex. E. The Board denied the grievance, offering a new explanation for terminating his employment: budgetary considerations combined with his "unsatisfactory" rating. Am. Compl. ¶¶ 32–33; Resp. Br., Ex. E.[2] According to Thompson, the Board relied on the "unsatisfactory" rating despite knowing that it was fraudulent. He also alleges that a grievance about the "unsatisfactory" rating remains pending, meaning that the Board used the rating to justify his dismissal without waiting for the grievance to be resolved.

### 1. Claim preclusion (res judicata)

Defendants argue that this claim is precluded by the judgment in Thompson's 2011 federal case. Again, dismissing a claim as precluded at this stage is appropriate only if documents properly before the Court clearly show that the defense applies. *See Muhammad*, 547 F.3d at 878; *Carr*, 591 F.3d at 913.

Under federal law, as under Illinois law, claim preclusion applies if an earlier case between "the same litigants (directly or through privity of interest)" arose from the "same transaction (identified by its 'operative facts')," and there has been "a final decision in the first

---

[2] Again, Thompson's complaint does not include a full description of the Board's shifting explanations, but he attached the Board's initial letter and grievance rejection to his response brief. Although he did not attach these documents to his complaint, he relies upon them in the complaint, so the Court may properly consider them. *See Williamson*, 714 F.3d at 436.

suit." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009). The judgment in Thompson's 2011 case is final, *see Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014) (judgment based on settlement is final for purposes of claim preclusion), and the defendants in the current case were also defendants in that case or in privity with them. Whether the dispute in this case arises from the same operative facts as the dispute in the 2011 case depends on whether Thompson's ultimate discharge should have been part of that case.

Because Thompson learned that he had lost his job before discovery closed in the 2011 case, Defendants contend that he could have added a retaliatory discharge claim to that case and thus this claim is precluded. They say that Thompson "proffers no justifiable reason" for not bringing the claim then. Mot. Dismiss at 11. But they offer no authority for the proposition that a claim like this one, arising after an earlier related federal lawsuit was filed, is precluded even though the claim was not added to that case. Had Defendants researched the issue, they would have learned that the "federal rule is that claim preclusion generally does not bar a subsequent lawsuit for issues that arise after the operative complaint is filed." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 652 (7th Cir. 2011). Thompson filed the operative complaint in the 2011 federal case on May 6, 2013, but he was not fired until August 2013.

Defendants offer no reason to deviate from the general rule. Because Count I does not arise from the same operative facts as a claim that could have been brought when Thompson filed the operative complaint in his 2011 case, the Court finds that his retaliatory discharge claim is not precluded.

The Court notes, however, that one of Thompson's major arguments against preclusion is without merit. He contends that the settlement agreement in the 2011 federal case specifically

preserved his right to pursue the claims in this case regardless of preclusion, pointing to this provision:

> [T]he Agreement is executed except for the following claims contained in Thompson's other legal matters currently pending against the Board: 1) Thompson v. Board, et al., 14 C 6340, consolidated matter, pending in the U.S. District Court for the Northern District of Illinois, Eastern Division.

Resp. Br. at 4–7. This language, however, means only that the settlement agreement did not extend to this case. It does not limit Defendants' ability to raise defenses to Thompson's current claims.

### 2. Issue preclusion (collateral estoppel)

In his 2011 federal case, Thompson claimed that the "unsatisfactory" rating he received was retaliation for a complaint he had filed with the EEOC in 2010. Judge Guzmán granted summary judgment on that claim to the defendants, explaining, "There is no evidence . . . that suggests Evans gave plaintiff a poor performance evaluation for 2011–12 in retaliation for his 2010 filing of a race discrimination charge." *Thompson v. Bd. of Educ. of City of Chicago*, No. 11 C 1712, 2014 WL 1322958, at *6 (N.D. Ill. Apr. 2, 2014). Defendants argue that this ruling precludes a contrary ruling in this case and defeats Thompson's due process claim.

"Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (citing Restatement (Second) of Judgments § 27 (1980)). Defendants are correct that the earlier grant of summary judgment means Thompson cannot now claim that his "unsatisfactory" rating was retaliatory. But the question whether he was fired later in retaliation for the 2011 case has not been decided, and Thompson is not precluded from arguing that the Board's proffered reason for firing him at that time—his earlier "unsatisfactory" rating—was pretextual. The rating could be invalid (and widely known to be

invalid) without having been in retaliation for an earlier protected act. For example, the rating could have been the product of personal dislike of Thompson. Or the rating could be completely valid yet not the true reason for his firing. Accordingly, Defendants' issue preclusion argument is unpersuasive.

## C. Count II – Due Process

Thompson claims that Defendants denied him due process of law when terminating his employment. "A public employee who can be fired only for good cause has a property interest in his or her job and may be deprived of that property interest only with due process of law." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 474 (7th Cir. 2014). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The specifics of this requirement are "flexible" and depend on the circumstances of the case. *Mathews*, 424 U.S. at 334.

In support of his claim, Thompson alleges that he had a property interest in his job as a tenured teacher and that the Board deprived him of that property through a fundamentally unfair process. Am. Compl. ¶¶ 24, 52–71. The process was constitutionally deficient, Thompson says, because the Board relied on his "unsatisfactory" rating to dismiss him despite knowing that the evaluation was invalid and that a grievance concerning it was still pending. *Id.*

### 1. Subject matter jurisdiction

Defendants first argue that Count II must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Mot. Dismiss at 6–7. They contend that the claim is really for the alleged violation of a collective bargaining agreement and that Illinois law gives "exclusive jurisdiction" over such claims to the grievance process provided in the CBA. *Id.* at 6; *see Bd. of*

*Educ. of Warren Twp. High Sch. Dist. 121 v. Warren Twp. High Sch. Fed'n of Teachers, Local 504*, 538 N.E.2d 524, 529 (Ill. 1989). Thompson's response is a bit muddled, but he seems to be reiterating that his claim is for a denial of federally protected rights rather than for breach of the CBA. *See* Reply Br. at 2–3.

The Court concludes that Thompson's allegations amply support his characterization of Count II as a due process claim rather than as a claim for violations of a CBA. Although he does refer to CBA violations, his essential argument is that he was deprived of property (his job) through a fundamentally unfair process. Whether he was denied due process presents a federal question, *see Carmody*, 747 F.3d at 474, and 28 U.S.C. § 1331 provides this court with jurisdiction to decide it. Moreover—as Defendants acknowledge—Illinois courts require employees merely to *attempt* to exhaust their CBA remedies before filing suit. Mot. Dismiss at 6–7, *see Zelenka v. City of Chicago*, 504 N.E.2d 843, 848 (Ill. App. 1987). According to Thompson's allegations, he attempted to use the grievance process, but the Board fell back on his "unsatisfactory" rating to justify firing him despite that the grievance is still pending. Am. Compl. ¶¶ 24, 26. The existence of the CBA may have implications for the merits of Thompson's due process claim, but it does not strip the Court of subject matter jurisdiction.

Defendants contend later in their motion to dismiss (when discussing another claim) that Thompson's "termination hearing is active and ongoing" and thus any due process claim is unripe. Mot. Dismiss at 27. The success of a due process claim depends on what process the plaintiff has been afforded, *see Carmody*, 747 F.3d at 479, so if Thompson does have an ongoing termination hearing, his due process claim is likely premature. (The exception would be a claim based on insufficient pre-termination process. *Id.* at 474–76.) But Thompson does not allege that he has an ongoing termination hearing. Although he does refer to two pending grievances, *see id.*

¶¶ 15, 24, neither concerns his firing. If Defendants are correct that a termination hearing is ongoing, that fact may defeat this claim at a later stage, but their mere assertion cannot do so.

### 2. Failure to state a claim

Defendants also argue that Thompson's due process claim should be dismissed under Rule 12(b)(6) for failure to state a claim. A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 570).

According to Defendants, Thompson's due process allegations are deficient because he did not identify a provision in the CBA that granted him a property right in his job. Mot. Dismiss at 19–20. Thompson simply alleged that he was a tenured employee. Am. Compl. ¶ 9. Defendants rely on *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010), in which the Seventh Circuit stated that if "a plaintiff alleges that the due-process entitlement arises from a collective-bargaining agreement, he must identify specific terms of the agreement that contained a promise of continued employment."

However, when all reasonable inferences are granted in his favor, Thompson does not assert that his entitlement to due process arose from a CBA; he says that it arose from the Constitution. *Palka*, therefore, does not apply, and Thompson's allegation that he was a tenured teacher is sufficient at the pleading stage to establish that he has a property right in his job.[3]

---

[3]Additionally, the statement from *Palka* is dicta. The *Palka* court declined to decide whether the plaintiff's property-right allegations were sufficient and dismissed the due process claim on another ground. *Id.* at 452–53. And the case that *Palka* cites for the stated proposition, *Krieg v. Seybold*, 481 F.3d 512, 519–20 (7th Cir. 2007), concerned a motion for summary judgment rather than a motion to dismiss.

### 3. Claim preclusion

Just as Defendants' argued in attacking Thompson's retaliation claim, they argue that his due process claim is precluded by the judgment in the 2011 federal case. Although they are again correct that any claim based on the "unsatisfactory" rating alone needed to be brought in the earlier case, Thompson's due process claim, like his retaliation claim, is based on his firing. As explained above, the 2011 case does not preclude Thompson from arguing that the Board improperly relied on an invalid performance review to terminate his employment.

### D. Count III – Fourth Amendment

Thompson claims that Defendant Sullivan (the Board's Inspector General) violated the Fourth Amendment by issuing a subpoena to AOL seeking Thompson's personal emails. Am. Compl. ¶¶ 72–82. The subpoena, which Thompson attached to his complaint, *id.*, Ex. A., sought in relevant part "[a]ny historical records of emails sent by Mark A. Thompson . . . to [redacted]." *Id.* (Presumably the redacted name is that of the girl who accused Thompson of sexual assault.)

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015). Generally, the government must obtain a warrant supported by probable cause to conduct a search, though numerous exceptions have been recognized. *See City of Los Angeles*, 135 S. Ct. at 2452. Administrative subpoenas, though they do "implicate[] the Fourth Amendment," do so "only to the extent of requiring that the demand for information be 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.'" *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 646 (7th Cir. 2013) (quoting *See v. City of Seattle*, 387 U.S. 541, 544 (1967)).

But the relaxed Fourth Amendment standard for administrative subpoenas does not apply if the purpose of the subpoena is "principally to further a criminal investigation." *United States v. Utecht*, 238 F.3d 882, 887 (7th Cir. 2001). The subpoena in this case was issued to investigate the alleged sexual assault of a minor. Although the subpoena was not issued by law enforcement, the Court must draw all reasonable inferences in favor of Thompson and presume that the Inspector General planned to turn over any evidence of sexual assault to law enforcement. If that presumption is correct, the subpoena would be subject to ordinary Fourth Amendment rules. *See id.* ("[I]f the IRS uses civil subpoenas without establishing the probable cause necessary for criminal cases after having made an institutional commitment to recommend prosecution of the defendant, evidence obtained through these subpoenas possibly could be suppressed at a criminal trial.").

### 1. Failure to state a claim

Defendants do not discuss the standard under which the subpoena should be evaluated. They simply argue that Thompson has not stated a Fourth Amendment claim because the subpoena was directed at AOL rather than at him. Mot. Dismiss at 21–22. They seem to be relying on the "third-party" doctrine, which holds that people do not have a reasonable expectation of privacy in information that they voluntarily give to a third party. *United States v. Miller*, 425 U.S. 435, 442–43 (1976). The third-party doctrine applies to bank records, *id.*, and to the telephone numbers a person dials, *Smith v. Maryland*, 442 U.S. 735 (1979). By contrast, people are generally understood to have a reasonable expectation of privacy in the content of their private telephone conversations, even when using a public pay phone. *See Katz v. United States*, 389 U.S. 347 (1967); *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972) ("[*Katz*] implicitly recognized that the broad and unsuspected

governmental incursions into conversational privacy which electronic surveillance entails necessitate the application of Fourth Amendment safeguards." (footnote omitted).)

The subpoena at issue in this case was indeed directed at AOL, but Thompson alleges that it sought the content of his personal email. Am. Compl. ¶ 76. Although the question of whether people have a reasonable expectation of privacy in email stored on a remote server remains open in this Circuit, the Sixth Circuit concluded in *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010), that people do have a reasonable expectation of privacy in the content of their stored emails and that the government must obtain a warrant before seeking such emails from an internet service provider. Numerous courts that have agreed with this conclusion. *See e.g.*, *In re Applications for Search Warrants for Case Nos. 12-MJ-8119-DJW & Info. Associated with 12-MJ-8191-DJW Target Email Address*, Nos. 12-MJ-8119-DJW & 12-MJ-8191-DJW, 2012 WL 4383917, at *5 (D. Kan. Sept. 21, 2012) ("The Court finds the rationale set forth in *Warshak* persuasive and therefore holds that an individual has a reasonable expectation of privacy in emails or faxes stored with, sent to, or received thorough an electronic communications service provider."); *United States v. Ali*, 870 F. Supp. 2d 10, 39 n.39 (D.D.C. 2012) (agreeing with *Warshak*'s conclusion that "individuals have a reasonable expectation of privacy in the content of emails stored, sent, or received through a commercial internet service provider").

The Court agrees with the Sixth Circuit's assessment in *Warshak*, 631 F.3d at 283–288. The content of personal email is more akin to the content of a telephone conversation than it is to records of telephone numbers dialed or bank records. If Thompson's allegation that the subpoena at issue sought the content of his personal email is true,[4] then the issuance of the subpoena constitutes a search that falls under *Katz* rather than *Smith* or *Miller*, and the third-party doctrine

---

[4] *See* Section III.E.2., *infra*, for further discussion of the plausibility of this allegation.

does not control. The Court therefore concludes Count III should not be dismissed for failure to state a claim.

### 2. Statute of limitations

Defendants argue that Thompson's Fourth Amendment claim is barred by the statute of limitations. Normally a limitations defense must be pleaded in an answer, but a district court may dismiss a claim under Rule 12(b)(6) as untimely if the complaint reveals that the claim is unquestionably untimely. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). The limitations period for claims under 42 U.S.C. § 1983 is taken from state law. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). In Illinois, the period is two years. *Id.*

Defendants, pointing to the date on the AOL subpoena, contend that Thompson needed to bring his Fourth Amendment claim by July 2013. Mot. Dismiss at 15–16. He did not file this lawsuit until August 2014.

Thompson responds that he was unaware of the subpoena until February 2013, after a copy was produced in his earlier federal case. Resp. Br. at 13. Under these circumstances, his claim is not unquestionably time-barred and cannot be dismissed on that ground at this time.

## E. Counts IV and V – Stored Communications Act

Thompson claims in these two counts that the Board and Sullivan violated the Stored Communications Act, 18 U.S.C. §§ 2701–12, when Sullivan subpoenaed his emails. The Act allows the government to obtain certain email records, not including "the contents of communications," by subpoena and without notification to the subscriber. *See id.* § 2703(c)(2). To obtain the *content* of emails by subpoena, the Act requires that the subscriber first be notified (with some exceptions). *See id.* §§ 2703(b), 2705. In both Counts IV and V, Thompson alleges

that the subpoena sought the content of his email communications and so was not authorized under the Act. *See* Am. Compl. ¶¶ 93–102.

### 1. Statute of limitations

Under 18 U.S.C. § 2707(f), claims for violations of the Stored Communications Act must be brought within two years. Defendants argue that Thompson's claims should be dismissed as time-barred because he filed this lawsuit more than two years after the subpoena issued. But their argument suffers from the same weakness as their argument about Thompson's Fourth Amendment claim: Thompson alleges that he did not learn of the subpoena until February 2013.

### 2. Failure to state a claim

Defendants also argue that the subpoena complied with § 2703(c)(2), and so Thompson fails to state a claim. Mot. Dismiss at 22. They contend that the plain language of the subpoena shows that they did not seek the content of Thompson's communications. Reply Br. at 11.

Thompson disagrees, arguing that the subpoena, which requested "any historical records" of communications between him and a particular person, did seek the contents of his emails. Resp. Br. 20–21. The language in question may well mean, as Defendants contend, merely a "listing of the emails," but the Court finds the language to be ambiguous. At this stage, the Court must accept Thompson's plausible allegations as true, though they may ultimately be disproved. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) ("[A] judge cannot reject a complaint's plausible allegations by calling them 'unpersuasive.'"). Based on the Defendants' current arguments, dismissal for failure to state a claim is denied.

## F. Count VI – Negligent Infliction of Emotional Distress

Thompson claims that Evans (the principal of Harlan) and Krieger (Director of the Office of Employee Relations) are liable to him for negligent infliction of emotional distress. They

acted outrageously, he alleges, in giving him the "unsatisfactory" rating and then firing him based on that invalid performance review. Am. Compl. ¶¶ 103–11.

### 1. Subject matter jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over this Count, again contending that Thompson is complaining about a violation of the CBA. But their argument fails for essentially the same reasons discussed in the Court's analysis of Count II. Again, Thompson's claim is not for a violation of the CBA; it is a state-law tort claim based on the purportedly dishonest and outrageous conduct of certain Defendants, and the Court has jurisdiction over supplemental state claims under 28 U.S.C. § 1367.

### 2. Claim preclusion

Defendants also argue that Thompson's emotional distress claim is precluded by the 2011 federal case because the outrageous conduct Thompson alleges is the conduct surrounding his "unsatisfactory" evaluation, which could have been litigated in the earlier case. That would be true except that Thompson is careful to specify that his emotional distress resulted from losing his job based on the unwarranted negative evaluation. Am. Compl. ¶ 110. If Thompson did not suffer severe emotional distress until he lost his job in 2013, he could not have stated an emotional distress claim until after he filed his complaint in the 2011 case. As explained earlier, the 2011 case does not preclude claims that arose after he filed the operative complaint in that case. *See Ellis*, 650 F.3d at 652. Thus Thompson's emotional distress claim cannot be dismissed on preclusion grounds.

### 3. Failure to state a claim

Defendants argue that Thompson has not stated a claim for negligent infliction of emotional distress. Mot. Dismiss at 22–23. He describes injuries that were caused intentionally

rather than negligently, they point out, and intentional conduct cannot be the basis for a negligent infliction claim. *See, e.g.*, *State Farm Fire & Cas. Co. v. Watters*, 644 N.E.2d 492, 498 (Ill. 1994).

Conceding that he has not stated a negligent infliction claim, Thompson seeks leave to amend this Count. Perhaps he wants to take another shot at this claim,[5] or he may plan to state a claim for intentional infliction of emotional distress. Either way, if he wishes to amend his complaint, he may file a motion for leave to do so and attach the proposed amendment. Count VI is dismissed.

## G. Count VII – Negligent Supervision

Thompson's allegations in support of Count VII are confined to the Board's failure to prevent the unfair "unsatisfactory" rating. Am. Compl. ¶¶ 112–21. This Count is not about the Board's supervision during Thompson's ultimate dismissal. He does reference losing his job because of the negative performance evaluation, *id.* ¶ 120, but his job loss would go to damages.

This claim suffers from numerous weaknesses. Most dispositive is that the 2011 federal case precludes it. As previously explained, under federal law three elements must be present for claim preclusion to apply: "a final decision in the first suit; a dispute arising from the same transaction (identified by its 'operative facts'); and the same litigants (directly or through privity of interest)." *U.S. ex rel. Lusby*, 570 F.3d at 851 (citation omitted).

The Board was a defendant in the 2011 federal case, and Thompson brought a retaliation claim based on the "unsatisfactory" rating in that case. There is no reason that he could not have

---

[5] If Thompson does want to pursue a negligent infliction of emotional distress claim, he should keep in mind that negligent infliction claims in Illinois require that the plaintiff have suffered a physical injury contemporaneous with the emotional one or at least have been in the "zone of danger" when someone else suffered a physical injury. *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 5 (Ill. 1983). Thompson does not allege a physical injury. (His general reference to suffering "physical stress" is insufficient.)

brought his negligent supervision claim in that case as well. He settled the case instead, and the judgment is final. Count VII is dismissed.

## H. Count VIII – Illinois Personnel Records Review Act

In this Count, Thompson claims that Defendants violated the Illinois Personnel Records Review Act (PRRA), 820 ILCS 40 *et seq.*, in two ways. First, he claims that they violated the PRRA's "open records" provision by refusing to give him personnel records relating to his two suspensions. Employers are required to provide employees with access to their personnel files unless a listed exception applies. *Id.* §§ 2, 10. Second, he claims that they violated § 13 of the PRRA by retaining records of the DCFS investigation of Thompson even after DCFS declared the abuse report "unfounded." Employers are required to purge records of any DCFS investigation that ended with a finding of "unfounded." *Id.* § 13.

The PRRA creates a private cause of action for violations, though employees must file a complaint with the Department of Labor and await its rejection before filing a lawsuit. *Id.* § 12(b)–(c). Thompson alleges that he did so, which is confirmed by a letter from the Department of Labor attached to his complaint. Am. Compl. ¶ 138, Ex. B.

### 1. Failure to state a claim

Defendants contend that Thompson has not stated any PRRA claim, first arguing that they were not obliged under the Act to give Thompson access to the personnel records at issue. Mot. Dismiss at 23–24. They point to the disclosure exception for records that may be discovered in a judicial proceeding. *See* 820 ILCS 40/10(f).

Thompson responds that Defendants refused to produce the records in question during discovery in his other cases. Resp. Br. 21–22. *See also* Am. Compl. ¶ 125. If so, the records do

not obviously fall under § 10(f). The Court thus concludes that Thompson has stated a claim for a violation of the PRRA's "open records" provision, § 2.

Thompson's claim about the Board's failure to purge the DCFS records does not fare as well. Defendants contend that Thompson does not state a claim under § 13 of the PRRA because he did not allege that he provided the Board with a copy of the notice he received from DCFS. Section 13 provides:

> An employee upon receiving written notification from the Department of Children and Family Services that an investigation has resulted in an unfounded report shall take the written notification to his or her employer and have any record of the investigation expunged from his or her employee record.

820 ILCS 40/13. Thompson responds it was sufficient for him to allege that he emailed CPS General Counsel to notify him of the "unfounded" finding. Resp. Br. at 23; *see* Am. Compl. ¶¶ 132–33.

The Court agrees with Defendants that the alleged email was insufficient to comply with the requirements of § 13 of the PRRA, so Thompson's claim under that section must be dismissed. If Thompson did in fact provide the Board with a copy of the written notice he received from DCFS, he may move to amend his complaint.

**2. Statute of limitations**

Defendants also seek the dismissal of Thompson's PRRA claims as time-barred. The Act does not specify a limitations period, but Defendants argue that the Tort Immunity Act, 745 ILCS 10/8–101, imposes a one-year limitations period on PRRA claims. That period, they say, expired August 7, 2014, one year after the Department of Labor declined to take action on Thompson's behalf.

Thompson responds that the Tort Immunity Act is inapplicable to his claims because he seeks declaratory and injunctive relief rather than damages. Indeed, the one-year limitations

period in the Tort Immunity Act does not apply to actions seeking "relief other than damages." 745 ILCS 10/2–101; *see also Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 444 (Ill. 2004) ("Plaintiffs' claim is an action which seeks 'relief other than damages,' as set forth in the first sentence of section 2–101, and is, therefore, excluded from the Act.").

In their reply brief, Defendants continue to insist that the Tort Immunity Act does apply, but they do not address § 2–101 or the *Raintree Homes* case cited above. Having failed to cite any relevant authority for their position or to respond meaningfully to Thompson's argument, they have failed to persuade the Court that a one-year limitations period applies. The Court declines to rule at this time on what the applicable limitations period actually is.

## I. Counts IX, X – Conspiracy to Deny Civil Rights

Thompson's claims in Counts IX and X are concerned primarily with Defendants' conduct during various legal proceedings, including his 2011 federal case. He claims under 42 U.S.C. §§ 1985(2)–(3) and 1986 that Defendants' withholding of his personnel file constituted a conspiracy to deny him access to the courts and to obstruct justice.

Defendants move to dismiss these counts on multiple grounds, including failure to state a claim, statute of limitations, and preclusion. Their statute of limitations and preclusion arguments are unpersuasive at this stage for the same reasons they were unpersuasive as applied to some of the other claims in this case. The Court agrees, however, that Thompson has not stated a conspiracy claim.

Under 42 U.S.C. § 1985(2), a person can be liable for conspiring to injure a party or witness for attending or testifying in court. *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). If the court in question is a state court, the conspirators must have been motivated by class-based animus, but that requirement does not apply when the court

in question is federal. *Id.* Under 42 U.S.C. § 1985(3), a person can be liable for conspiring to obstruct justice but only if the conspiracy was motivated by class-based animus. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (liability under § 1985(3) requires that "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971))). Thompson includes allegations about both his state and federal cases, but he does not allege class-based animus.

Defendants argue that, with no allegation of class-based animus, Thompson cannot state a § 1985(2) claim about the state court proceedings. They then argue that Thompson also has not stated a § 1985(2) claim about the 2011 federal case because he settled that case, mooting any claim based upon it. Thompson's only response is that Defendants have waived any argument about his § 1985(3) obstruction-of-justice claim by not addressing it. Resp. Br. at 23–24.

The Court holds that Thompson, because he did not allege class-based animus, has not stated a claim under § 1985(2) for denial of access to a state court. In the same way, he has not stated a § 1985(3) obstruction claim.[6]

The Court also agrees with Defendants that any §1985(2) claim based on Thompson's allegations about the 2011 federal case must be dismissed. His allegation supporting that claim is that Defendants defied a discovery order in that case. Am. Compl. ¶143. He seems to be looking for a backdoor to reopen old discovery disputes. His chance to seek redress for Defendants' alleged noncompliance with discovery orders in the 2011 federal case was during that case, which he chose to settle.

---

[6] Defendants are excused for not addressing that claim explicitly. It was melded with the § 1985(2) claim in Thompson's complaint, and their argument about class-based animus squarely applies to the claim.

Thompson's claim against the Board under § 1986 must also be dismissed. That provision requires knowledge of a conspiracy, and "in the absence of a viable claim under § 1985[(2)], a § 1986 claim cannot exist." *Hicks v. Resolution Trust*, 970 F.2d 378, 382 (7th Cir. 1992).

## J. Count XI

Thompson claims in Count XI that Defendants are liable under 42 U.S.C. § 1983 for denying him equal protection of the laws by concealing evidence that he was not guilty of "abuse." Am. Compl. ¶ 165. Presumably he is referring to the sexual assault investigation.

Defendants argue that this Count should be dismissed for failure to state a claim, and the Court agrees. Thompson says that he was denied equal protection of the laws, yet he never explains how Defendants treated him differently than anyone else. By failing to allege facts that show disparate treatment, he has failed to allege an equal protection claim. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Mere "legal conclusions" do not satisfy the standard laid out by the Supreme Court in *Twombly* and *Iqbal*. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Count XI is dismissed.

## K. Count XII – Fabrication of Evidence

Thompson voluntarily dismisses this claim.

### Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss Counts VI, VII, VIII (in part), and IX–XII. The motion is denied as to the remaining counts. In the event that Thompson wishes to request leave to amend his complaint consistent with this order, any such motion must be filed within 14 days.

**IT IS SO ORDERED**          **ENTER:** 1/29/16

_____

**JOHN Z. LEE**

**United States District Judge**