IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 6340 |
| | ) | |
| BOARD OF EDUCATION CITY OF | ) | Judge John Z. Lee |
| CHICAGO, ILLINOIS STATE BOARD OF | ) | |
| EDUCATION, NORTHSHORE UNIVERSITY | ) | |
| HEALTHSYSTEM, HAROLD ARDELL, | ) | |
| LINDA BROWN, FORREST CLAYPOOL, | ) | |
| JANE DOE, JANE DOE'S MOTHER, | ) | |
| REGINALD EVANS, THOMAS KRIEGER, | ) | |
| DAN NIELSEN, JAMES SULLIVAN, | ) | |
| CLAUDIA P. WELKE, and ALICIA | ) | |
| WINCKLER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Thompson was a teacher in the Chicago Public Schools (CPS), who was terminated on [ ]. Since that time, he has brought no less than seven separate lawsuits in state and federal court related to his various suspensions, transfers, and ultimate dismissal. Defendants have moved to dismiss the Second Amended Complaint based, in large part, on *res judicata* and absolute immunity grounds. The Court grants the motions [104][108][109][139] and dismisses the case.

**I. Factual & Procedural Background**

**A. Parties**

Plaintiff Thompson is an African-American teacher who worked for the CPS from 2001 to 2003, and from 2005 to 2013. CPS is overseen by the Defendant Board of Education of the

City of Chicago (Board). 2d Am. Compl. ¶ 6, ECF No. 99. At all times relevant to the complaint, Defendant James Sullivan was the Board's Inspector General, *id.* ¶ 18, Defendant Linda Brown was the Board's Director of Investigations, *id.* ¶ 9, and Defendant Thomas Krieger was the Board's Director of Office of Employee Relations, *id.* ¶ 16. Defendant Forrest Claypool was until recently CPS's CEO, *id.* ¶ 12, and during the relevant time period, Defendant Harold Ardell was CPS's law department investigator, Defendant Alicia Winckler was CPS's Chief Talent Officer, and Defendant Reginald Evans worked for CPS as the principal of Harlan High School. *Id.* ¶ 13.

Defendant Illinois State Board of Education (ISBE) enforces state education regulations. *Id.* ¶ 8. Defendant Dan Nielsen was employed by ISBE as the hearing officer that presided over Thompson's dismissal hearing. *Id.* ¶ 17.

In addition to teaching for the CPS, Plaintiff Thompson provided private athletic training to Defendant Jane Doe. *Id.* ¶ 15. Doe and her mother, who is also a defendant, lived outside of Cook County, and Jane did not attend a CPS school. *Id.* ¶¶ 14–15. Jane Doe received mental health treatment from Defendant Dr. Claudia P. Welke, a psychiatrist, through Defendant Northshore University Health System. *Id.* ¶¶ 9, 19.

**B. Thompson's Lawsuit that Forms the Basis for His Title VII Retaliation Claim**

On December 20, 2010, Thompson filed a lawsuit in the Circuit Court of Cook County, 2010 L 014372. *Id.* ¶ 33. That lawsuit, which was eventually removed to federal court and heard by Judge Ronald A. Guzmán, case no. 11 C 1712, was brought against the Board, Keith Brookshire, Deborah Edwards-Clay, and Reginald Evans, claiming gender and race discrimination and retaliation under Title VII and 42 U.S.C. § 1981, a violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174 *et seq.*, breach of contract, tortious interference with

contract, negligent supervision, libel per se, intentional infliction of emotional distress, and civil conspiracy. Case No. 11 C 1712, 5th Am. Compl., ECF No. 178. The adverse employment actions of which Thompson complained were his suspension and termination with regard to all coaching positions and physical education teaching positions and his transfer to a history teacher position, all of which occurred in 2010 while he worked at Harlan High School. *Id.* Thompson had not yet been fired when the operative complaint was filed. Judge Guzmán entered summary judgment in favor of the defendants on most of the claims, but he permitted Thompson to proceed on a claim that he had been suspended in retaliation for previously filing EEOC complaints. *See Thompson v. Bd. of Educ. of City of Chi*, No. 11 C 1712, 2014 WL 1322958, at *9 (N.D. Ill. Apr. 2, 2014). Thompson and the defendants settled the case in January 2015.

**C. The End of Thompson's Tenure with CPS**

Thompson provided private athletic training to Jane Doe. 2d Am. Compl. ¶ 15. Doe told local police that Thompson had stalked her, but the Board declined to investigate the claim in May 2010. *Id.* ¶ 32. Doe also told her psychiatrist, Dr. Welke, in April 2011, that Thompson had raped her when she was 17. *Id.* ¶ 19. Dr. Welke, in turn, reported Doe's account to Illinois Department of Children and Family Services (DCFS). *Id.* ¶ 35.

Thompson claims that the Board solicited Doe through her mother to make false rape claims against him in retaliation for his suing the Board and its employees in December 2010. *Id.* ¶ 34. Thompson alleges that Doe, her mother, and the Board conspired to have his employment terminated. *Id.* ¶ 39.

As part of the investigation into Doe's complaint, in August 2011, unbeknownst to Thompson, the Board subpoenaed and obtained Thompson's confidential AOL email records from January 2009 to December 2010. *Id.* ¶ 41. Thompson also alleges that the Board

3

obstructed justice and prevented him from learning about Doe's allegations against him until January 24, 2012. *Id.* ¶ 36. According to Thompson, the Board then interviewed Thompson and obtained his training schedule so that Doe and her mother could use it to file a false police report in February 2012. *Id.* ¶ 45.[1]

On May 21, 2012, Defendant Evans gave Thompson an "unsatisfactory" evaluation. *Id.* ¶ 51. The Board removed him from the classroom in June 2012. *Id.* ¶ 52. Thompson alleges the "unsatisfactory" evaluation was concocted by the Board as an alternative reason to terminate his employment in order to conceal the Board's retaliatory motive. *Id.* ¶ 53. Thompson alleges that the Board had allowed him to remain in the classroom teaching students during the investigation into Doe's accusations because the Board knew the accusations were false. *Id.*

Based on the investigation into Doe's claims, the Board suspended Thompson without pay on September 13, 2012, pending the ISBE dismissal hearing. *Id.* ¶ 52. The Board refused to turn over any related investigatory records to Thompson. *Id.* ¶ 58. In response to court orders, the Board turned over investigatory files on February 25, 2013, but, according to Thompson, the files it provided were incomplete, fabricated, and altered. *Id.* ¶ 60. Thompson asserts that the Board relied on these files to terminate his employment on August 16, 2013, and during the related hearing on December 9, 2013. *Id.* ¶¶ 68–70; *see* Board's Mem. Supp., Ex F, Opinion ¶ 11.

---

[1] Thompson asserts that Doe eventually told police officers that her mother made her file the police report and that she never intended to follow through with the charges. *Id.* ¶ 49. Thompson was never charged criminally. *Id.* ¶ 50.

**D. Additional Lawsuits**

Prior to filing the instant lawsuit, Thompson also had sued the Board, its employees, Jane Doe, Jane Doe's mother, and others in the Circuit Court of Lake County ("case no. 13 L 879").[2] Board's Mem. Supp., Ex. B, 13 L 879 Compl. That case, filed in November 2013, asserted twelve state-law tort and statutory claims related to the sexual-assault investigation, including claims that the Board and CPS employees subjected him to negligent infliction of emotional distress, and that the Board, Doe, and her mother conspired (1) to conceal Doe's allegations from him; (2) to fabricate, alter, and destroy evidence; (3) to illegally obtain his confidential communications; and (4) to terminate Thompson's employment. The circuit court denied Thompson's motion to add a Title VII claim, in part, because his inexcusable delay in adding the claim prejudiced the defendants. *See* Pl.'s Mem. Supp., Ex. F, 8/26/14 Order in case no. 13 L 879. The court granted the defendants' motion to dismiss on August 2014, see Board's Mem. Supp., Ex. C, Opinion, and Thompson appealed. The appellate court affirmed the judgment in all respects and, in particular, affirmed the denial of the motion to add the Title VII claim as untimely and inexcusable. *See id.* Thompson petitioned for leave to appeal to the Illinois Supreme Court, which was denied, *see id.*, Ex. D, PLA denial, *Thompson v. Bd. of Educ. Twp. High Sch. Dist. 113*, No. 120789, 60 N.E.3d 883 (Ill. 2016).

Shortly thereafter, on December 2, 2013, Thompson filed a three-count declaratory judgment action ("case no 13 CH 26625") in the Circuit Court of Cook County against Jane Doe, Northshore University Healthsystem (NUHS) (the custodian of Jane Doe's mental health records), Dr. Claudia P. Welke (Doe's psychiatrist), and Stephanie Locascio (Doe's therapist). Welke & NUHS's Mem. Supp. Ex. A, 13 CH 26625 Compl. Thompson alleged that Dr. Welke,

---
[2] In case no. 13 L 879, Thompson sued, among others, the Board of Education of the City of Chicago, Harold Ardell, Linda Brown, Reginald Evans, Jane Doe, Jane Doe's mother, and James Sullivan, all of whom are named in the instant lawsuit. *See* Board's Mem. Supp., Ex. B, 13 L 879 Compl.

as an employee of NUHS, reported Jane Doe's false claim of rape to DCFS, which led to an investigation and his termination. *Id.* ¶ 56. He alleged that CPS and Board employees concealed Doe's allegations from him. *Id.* ¶¶ 57–60. Thompson sought a declaration that any privacy in Doe's records had been waived as well as an injunction to compel the defendants to turn over the records. *Id.* ¶¶ 100(e), 107(e), 115(e). A motion to dismiss was filed, and the court granted the motion. *See id.*, Ex. 2, Opinion. The appellate court affirmed the judgment, Board's Mem. Supp., Ex. G, Opinion ¶ 67, and the Illinois Supreme Court denied his petition for leave to appeal, *see Thompson v. N.J.*, No. 120993, 60 N.E.3d 883 (Ill. 2016).

Lastly, Thompson sued the Board and Barbara Byrd-Bennett, then-CEO of CPS, in the Circuit Court of Cook County on September 29, 2014 ("case no. 14 CH 15697"). *Id.*, Ex. E, 14 CH 15697 Compl. He requested a declaration that the ISBE lacked jurisdiction with regard to his dismissal hearing and sought to enjoin the hearing. *See id.* ¶ 16. The circuit court dismissed the complaint for failure to exhaust administrative remedies and for failure to state a claim. *See id.*, Ex F, Opinion ¶ 19. The appellate court affirmed, holding that the dismissal hearing was within the jurisdiction of the ISBE and that Thompson had failed to exhaust his administrative remedies. *Id.* Thompson's petition for leave to appeal to the Illinois Supreme Court was denied. *See Thompson v. Bd. of Educ. of City of Chi.*, No. 121051, 60 N.E.3d 883 (Ill. 2016).

## E. The Instant Lawsuit

While all of the above cases were still pending at the trial or appellate level in state court, Thompson filed three separate lawsuits that were consolidated into this single case.[3] The

---

[3] The instant case, case no. 14 C 6340, was filed on August 18, 2014. As for the two cases that have been consolidated with this case: (1) case no. 14 C 7575 (asserting claims against the Board) was removed to federal court on September 29, 2014, but the complaint was originally filed in state court on August 26, 2014; and (2) case no. 14 C 6838 (asserting claims against the Board, Harold Ardell, Linda Brown, James Sullivan, and Alicia Winckler) was filed on September 4, 2014. Because all three of these cases were filed before the state court proceedings concluded in case nos. 13 L 879, 13 CH 26625, and 14

6

consolidated complaint alleged: retaliatory discharge under Title VII for filing the earlier Title VII lawsuit (Count I); a due process violation (Count II); a fourth amendment violation (Count III); violations of the Stored Communications Act, 18 U.S.C. § 2703 (Counts IV and V); negligent infliction of emotional distress (Count VI); negligent supervision (Count VII); violation of the Illinois Personnel Records Review Act (IPRRA) (Count VIII); conspiracy to deny him access to the courts and to obstruct justice (Counts IX and X); an equal protection violation by concealing evidence during the sexual assault investigation (Count XI); and a due process violation based on the fabrication of evidence (Count XII).

The Board and its employees moved to dismiss the consolidated complaint. *See* ECF No. 32. The Court granted in part and denied in part the motion. ECF No. 56. The Court granted the motion as to Counts VII, IX, and X, which were dismissed with prejudice, and as to Counts VI, VIII (under IPRRA § 13), XI, and XII,[4] which were dismissed without prejudice. *Id.* The Court denied the motion as to Counts I–V, and the remainder of Count VIII (under IPRRA § 2). *Id.*

Thompson moved for leave to file a second amended complaint. ECF No. 93. The Court granted Thompson leave to file Counts I–VI, VIII–XIV, and XIX–XXIII. *Id.* The Court denied him leave to file Counts VII, XV–XVIII. *Id.* Thompson has indicated that Counts VII and XV–XVIII are no longer at issue before this Court. Pl.'s Resp. Br. at 6, ECF No. 118.

---

CH 15697, the Court has jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (internal quotation marks omitted).

[4]     In response to the motion to dismiss, Thompson withdrew Count XII of the First Amended Complaint. *See* Mem. Op. & Order at 24, ECF No. 56.

## II. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). The federal notice pleading standard requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are accepted as true, and courts must draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). In a motion to dismiss, a complaint's factual allegations may be supplemented by "documents that are attached to the complaint," as well as "documents that are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 10(c).

## III. Analysis

Defendants move to dismiss Counts I–VI, VIII–XIV, and XIX–XXIII of the Second Amended Complaint on multiple grounds. Defendants argue, among other things, that the asserted claims are barred by res judicata or absolute immunity.

**A.** *Res Judicata*

Preclusion is not one of the grounds for dismissal listed in Federal Rule of Civil Procedure Rule 12(b), and normally a preclusion defense must be raised in the answer to a complaint. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). One exception is if the complaint on its face discloses that the claims are precluded. *Id.* Another is if the error of raising the preclusion defense before answering "is of no consequence" because a court has before it everything "needed in order to be able to rule on the defense." *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). A court may take judicial notice of matters in the public record, including pleadings and orders in previous cases, without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court documents from prior state court litigation in deciding defendants' motion to dismiss for failure to state a claim).

Whether a state-court judgment precludes claims in a subsequent federal case depends on the preclusion rules of the particular state. 28 U.S.C. § 1738; *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995). In Illinois, the "doctrine of *res judicata* [claim preclusion] provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chi.*, 889 N.E.2d 210, 213 (Ill. 2008). The doctrine *"*bars not only what was actually decided in the first action but also whatever could have been decided." *Id.*

Generally speaking, "[m]ultiple lawsuits in separate forums, as well as requiring more than one court to analyze and digest the facts of a case, all have the effect of harassing defendants and wasting judicial manpower—the precise dangers the doctrine intends to prevent." *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1366 n.2 (7th Cir. 1988). The main thrust of

"claim preclusion is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." *Id.* (internal quotation marks omitted).

Defendants raised the issue of *res judicata* in their previously filed motion to dismiss. The Court denied the motion due to the pending appeal in case no. 13 L 879, and its concern that this circuit has not yet determined whether a pending appeal suspends the effect of claim preclusion. Mem. Op. & Order at 5 (quoting *Rogers*, 58 F.3d at 302 ("To be blunt, we have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment.")).

After the Court ruled on the motion to dismiss, however, the Illinois appellate court affirmed the dismissal on the merits of all three of Thompson's state court complaints in case nos. 13 L 879, 13 CH 26625, and 14 CH 15697, and the Illinois Supreme Court denied Thompson's petitions for leave to appeal in all three cases. *See* Board's Mem. Supp., Exs. C, D, F, G; *see also* 60 N.E.3d 883, Nos. 120789, 120993, 121051 (Sept. 28, 2016). Thus, the Court's earlier concern has been allayed because there has been a final judgment on the merits in each of Thompson's state court cases.

In the present lawsuit, Thompson has sued either the very same parties or their privies as in the state court litigation.[5] Parties identical to those sued in state court include the Board,

---

[5] In case no. 13 L 879, Thompson sued, among others, Jane Doe, Jane Doe's mother, the Board, and Board employees Harold Ardell, Linda Brown, Reginald Evans, and James Sullivan, regarding their alleged conduct related to his suspension, the termination of his employment, and the ISBE dismissal hearings, including the hearing addressing the denial of back pay. *See* Board's Mem. Supp., Ex. B, 13 L 879 Compl. In case no. 13 CH 26625, Thompson sued Doe, NUHS, Welke, and Locascio for declaratory and injunctive relief, alleging he had been terminated and had been wrongfully deprived of Doe's medical records in relation to the dismissal hearings. NUHS & Welke's Mem. Supp., Ex. A, Compl. In case no. 14 CH 15697, Thompson sued the Board and Barbara Byrd-Bennett, then-CEO of CPS, based on his federal lawsuit, case no. 11 C 1712, his suspension without pay, the retaliatory dismissal and denial of back pay hearing, CPS's ignoring all exculpatory evidence, illegally subpoenaed AOL email accounts, and failure to turn over investigatory files. *See* Board's Mem. Supp., Ex. E, 14 CH 15697 Compl.

Harold Ardell, Linda Brown, Reginald Evans, James Sullivan, NUHS, Welke, Doe, and Doe's mother. The following additional parties sued here are privies of the Board: Forrest Claypool, Thomas Krieger, and Alicia Winckler, all of whom are alleged to have acted in his or her capacity as a Board employee. *See Greer v. Horton*, No. 00 C 6695, 2002 WL 31121094, at *2 (N.D. Ill. Sept. 25, 2002), *aff'd sub nom. Greer v. Cty. of Cook*, 54 F. App'x 232 (7th Cir. 2002).

What is more, Thompson's claims in the Second Amended Complaint and his state-court lawsuits emerge from the same core of operative facts. For example, he alleges in the present case and had alleged in the state court litigation that the Board, its employees, Doe, and Doe's mother conspired to have his employment terminated based on false allegations. *Compare* 2d Am. Compl. ¶¶ 34, 61, 71, 171, 186, 189, 343, 362, *with* Board's Mem. Supp., Ex. B, 13 L 879 Compl. ¶¶ 102, 104, 138, 169–179. He also alleges that he had a pending federal lawsuit, case no. 11 C 1712, and that the termination of his employment and related proceedings constituted retaliation and harassment. *Compare* 2d Am. Compl. ¶¶ 33–34, 84, 242, *with* Board's Mem. Supp., Ex. B, 13 L 879 Compl. ¶¶ 87, 249, *and id.*, Ex. E, 14 CH 15697 Compl. ¶¶ 1, 13. He claims that the Board, its employees, and agents concealed Doe's allegations from him by intercepting his mail and otherwise withheld, altered, falsified, or manipulated evidence against him in order to justify his dismissal. *Compare* 2d Am. Compl. ¶¶ 60, 310–313, *with* Board's Mem. Supp., Ex. B, 13 L 879 Compl. ¶¶ 71–75, 143–149. He argues that the Board wrongfully obtained privileged communications via subpoena. *Compare* 2d Am. Compl. ¶¶ 108, 111, *with* Board's Mem. Supp., Ex. B, 13 L 879 Compl. ¶¶ 93–101. He asserts that the dismissal hearing related to back pay was retaliatory and lacked authority because he had already been discharged.

---

Thompson has also sued ISBE Hearing Officer Dan Nielsen in Count XIV, who has not asserted the *res judicata* defense. *See* Nielsen's Mem. Supp., ECF No. 139.

*Compare* 2d Am. Compl. ¶ 266, *with* Board's Mem. Supp., Ex. E, 14 CH 15697 Compl. ¶¶ 20–22. He says that Doe and her mother provided false testimony during the investigation and at his dismissal hearings. *Compare* 2d Am. Compl. ¶¶ 72, 74, 76, *with* Board's Mem. Supp., Ex. B, 13 L 879 Compl. ¶¶ 157, 159, 162. He states that Doe waived her right to privacy with regard to her mental health records, and, therefore, he should have been able to use the records to cross-examine her. *Compare* 2d Am. Compl. ¶¶ 39, 367(a)–(d), *with* NUHS & Welke's Mem. Supp., Ex. 1, 13 CH 26625 Compl. ¶¶ 100(a)–(e), 107(a)–(e), 115(a)–(e). In sum, the claims asserted here and in the state court lawsuits derive from the same nucleus of operative fact: the purportedly improper conduct relating to his suspension, the investigation, the proceedings, and his dismissal.

Thompson's reliance on new legal theories cannot save his claims from being precluded. *See Carr*, 591 F.3d at 913–14 ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory. That is called 'claim splitting,' and is barred by the doctrine of *res judicata*."). And although many of Thompson's current claims rely on federal law rather than state law, that, too, is unavailing because Illinois courts have jurisdiction to adjudicate federal claims, and Thompson undoubtedly could have brought his current claims in state court. *See Dookeran v. Cty. of Cook*, 719 F.3d 570, 576–77 (7th Cir. 2013) (State courts are "presumptively competent to adjudicate claims arising under the laws of the United States.") (internal quotation marks omitted); *Hondo, Inc. v. Sterling*, 21 F.3d 775, 779 (7th Cir. 1994) ("[S]tate courts have concurrent jurisdiction to enforce rights created by a federal statute.") (internal quotation marks omitted).

Thompson opines that *res judicata* should not bar his claims for several reasons. As an initial matter, Thompson asserts that, if the Court were to bar his Title VII claims, it would be, in

effect, giving a preclusive effect to unreviewed state administrative proceedings. Not so. By applying *res judicata* in this case, the Court gives preclusive effect to the state court *judgments* in case nos. 13 L 879, 13 CH 26625, and 14 CH 15697. *See Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) ("[A] federal court must give the same preclusive effect to a state-court judgment as another court of that State would give.").

Next, and relatedly, he argues that the Court cannot give preclusive effect to a state administrative proceeding (the back pay hearing) that was conducted without authority. This argument falters for the same reason provided above. Although Thompson alleges that the ISBE lacked authority to conduct the back pay hearing, the circuit courts in which he filed case nos. 13 L 879, 13 CH 26625, and 14 CH 15697 did not lack authority to adjudicate his claims.[6]

Finally, Thompson asserts that exceptions to the *res judicata* doctrine apply. The Illinois Supreme Court has recognized six exceptions to *res judicata* where:

> (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.

*Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1207 (Ill. 1996). According to Thompson, five of these exceptions apply.

---

[6] Moreover, there has been a final judgment on the merits in the state court litigation regarding certain defendants in this case that the ISBE properly exercised jurisdiction over the back pay hearing. *See* Board's Mem. Supp., Ex. E, 14 CH 15697 Compl.; *id.*, Ex F, Opinion ¶ 19 (affirming dismissal of the claim with prejudice); *Thompson v. Bd. of Educ. of City of Chi.*, No. 121051, 60 N.E.3d 883 (Ill. Sept. 28, 2016).

13

As to the first exception, Thompson does not argue that there was a claim-splitting agreement, explicit or otherwise. Rather, he leans heavily on acquiescence, but acquiescence would arise only if Defendants in this case neglected to object to the current lawsuit on *res judicata* grounds. *See Dinerstein v. Evanston Athl. Clubs, Inc.*, 64 N.E.3d 1132, 1144–49 (Ill. App. Ct. 2016). Clearly, they have not.

The second exception is also inapplicable. "The express reservation exception applies only to those portions of the prior complaint that had not reached final judgment and the plaintiff voluntarily dismissed." *Venturella v. Dreyfuss*, 84 N.E.3d 386, 394–95 (Ill. App. Ct. 2017). "[I]n order for a circuit court to expressly reserve a claim . . . , the reservation must be clearly and unmistakably communicated or directly stated." *Id.* at 395.

In *Venturella*, where a court had denied a motion to add a claim in a prior lawsuit and had not directly stated that it reserved the claim for future litigation in a docket entry or written order, the court in a subsequent lawsuit held, and the appellate court affirmed, that *res judicata* barred the claim and the express reservation exception was inapplicable. *Id.* Likewise, here, the circuit court in case no. 13 L 879 denied Thompson's motion for leave to add his Title VII claim and did not expressly state that in its order denying leave to amend or in any other order that it reserved the claim for future litigation. Rather, the circuit court denied the motion to add the Title VII claim as inexcusably untimely, *see* Pl.'s Mem. Supp., Ex. F, 8/26/14 Order, and the appellate court affirmed the denial, see Board's Mem. Supp., Ex. C, Opinion ¶¶ 74–79. Accordingly, as in *Venturella*, the express reservation exception does not apply.

Thompson fares no better with regard to the third exception. He asserts that he was unable to obtain relief with regard to certain of his claims because of a restriction on the subject matter jurisdiction of the circuit court in Lake County. He contends that the Lake County court

14

lacked jurisdiction to issue injunctive relief as to the Board and lacked jurisdiction to adjudicate his Personnel Record Review Act claims because the Board and his personnel records are located in Cook County. Regardless of whether either of these propositions has any merit, the Court finds this exception inapplicable because Thompson also had sued the Board for injunctive relief in Cook County, case no. 14 CH 15697, and he could have asserted his claims in that case since there had not yet been a final judgment on the merits in any of his cases at the time of its filing.

Next, Thompson contends that the fifth exception applies because the case involves a continuing or recurrent wrong. The Department of Labor concluded its administration and enforcement action under the IPPRA with regard to Thompson's request for personnel records on August 7, 2013, and there is no indication that Thompson had made any additional requests. 2d Am. Compl., Ex. A, 8/7/13 Notice. Thompson's employment was terminated on August 16, 2013, and the last hearing related to his dismissal occurred on December 9, 2013. To the extent that Thompson still feels affected by Defendants' conduct related to the investigation, the hearings, and the termination of his employment, the "lingering effect of an earlier, distinct" wrong does not make a violation continuing, see *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001). Because Thompson has not alleged a continuing or recurring wrong, the claims asserted in the Second Amended Complaint do not fall within this exception.

Lastly, with regard to the sixth exception, Thompson argues that he has clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. Thompson dedicates three sentences of his brief to this argument and fails to cite any law in support. *See* Pl.'s Resp. Br. at 12. The Court thus deems this argument waived. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (citations omitted)

("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

Having determined that the asserted exceptions to *res judicata* are inapplicable, the Court holds that the doctrine bars Counts I through VI, Counts VIII through XIV, and Counts XIX through XXIII against the Board, NUHS, Harold Ardell, Linda Brown, Forrest Claypool, Jane Doe, Jane Doe's mother, Reginald Evans, Thomas Krieger, James Sullivan, Claudia Welke, and Alicia Winckler.[7] Because the Court previously denied Thompson leave to file Count VII and Counts XV through XVIII, no claims remain as to these Defendants or the ISBE. *See* 3/23/17 Order, ECF No. 98.

**B. Absolute Immunity**

The only Defendant who has not asserted a *res judicata* defense is Dan Nielsen, the ISBE Hearing Officer who presided over Thompson's ISBE dismissal hearing on December 9, 2013. *See* 2d Am. Compl. ¶ 265. Instead, Nielsen asserts he is absolutely immune from liability with regard to Thompson's procedural due process claim against him for convening and presiding over the hearing. *Id.*

"Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). "Protection hinges not on the defendant's job title, but on the nature of the function he performed." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

Here, Thompson alleges that, as the hearing officer, Nielsen convened and presided over the December 9 hearing. 2d Am. Compl. ¶ 265. Thompson also states that, during the hearing, Nielsen exercised his discretion as an evidentiary gatekeeper and controlled the conduct of the

---

[7] Because the Court holds that *res judicata* bars these claims, it need not reach Defendants' additional arguments that the claims are also barred by Plaintiff's failure to exhaust and Plaintiff's release of claims in a prior settlement agreement.

16

attorneys. *Id.* ¶ 237. There is sufficient information in the Second Amended Complaint to conclude that Nielsen performed the function of a judge at the hearing.

That does not end the matter, however. A judge loses absolute immunity if he "act[s] in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quotation omitted). Jurisdiction of an administrative agency to conduct proceedings is conferred by statute. *Alvarado v. Indus. Comm'n*, 837 N.E.2d 909, 914 (Ill. 2005). The Illinois legislature has granted ISBE the authority and jurisdiction to hold hearings related to the removal of a permanently appointed teacher from his or her employment for cause. 105 Ill. Comp. Stat. 5/34-85.

Thompson alleges that he was suspended without pay and, according to him, the governing contract between the CPS and the Chicago Teachers Union prohibited suspending a tenured teacher without pay prior to a dismissal hearing. *See* Board's Mem. Supp., Ex. E, 14 CH 15697 Compl. ¶ 16; 2d Am. Compl. ¶ 152. Holding additional dismissal hearings in order to determine whether Thompson was entitled to back pay during the period between his suspension and a dismissal hearing is a matter that falls within the ISBE's jurisdiction. *See Newkirk v. Bigard*, 485 N.E.2d 321, 324 (Ill. 1985) (holding that the mining board had jurisdiction as long as the matter fell within the general class of cases within its province). This is consistent with the Illinois appellate court's conclusion that the ISBE had jurisdiction to convene Thompson's dismissal hearing in order to determine back pay. *See* Board's Mem. Supp., Ex. F, Opinion ¶ 15.

The Court concludes that Nielsen fulfilled the role of a judge at the December 9, 2013 hearing and that the ISBE had jurisdiction to hold the hearing. Accordingly, the Court grants Nielsen's motion to dismiss on the basis of absolute immunity with regard to Count XIV, the only claim against him.

## **Conclusion**

For the reasons set forth above, the Court grants Defendants' motion to dismiss [104, 108, 109, 139], and the Second Amended Complaint is dismissed with prejudice as to all Defendants. This case is hereby terminated. This is a final and appealable order.

**IT IS SO ORDERED**           **ENTER:** 3/21/18

*/s/ John Z. Lee*

_____
**JOHN Z. LEE**
**United States District Judge**